# C. Jutte & Company, Appellant, *v.* Pfeil.

*Contract—Fraud—Evidence—Statement as to liabilities—Equity.*

Where a bill in equity is filed to compel the delivery of stock of a corporation sold by the defendants to plaintiff, without payment by the plaintiff of a balance of purchase money withheld by the plaintiff on the ground of a false statement as to the liabilities of the corporation, the bill is properly dismissed where the court finds on sufficient evidence the fact that the statement submitted was true, and that it misled no one.

Argued Nov. 5, 1907. Appeal, No. 130, Oct. T., 1907, by plaintiff, from decree of C. P. No. 1, Allegheny Co., March T., 1906, No. 390, dismissing bill in equity in case of C. Jutte & Company v. P. M. Pfeil et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Bill in equity for an injunction and to compel the transfer of stock. Before MACFARLANE, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* with him *Wm. M. Robinson,* for appellant, cited: Lomerson v. John-

ston, 47 N. J. Eq. 312; Boyd v. Browne, 6 Pa. 310; Rheem v. Naugatuck Wheel Co., 33 Pa. 358; Stewart v. Wyoming Cattle Ranche Co., 128 U. S. 383.

*Willis F. McCook*, for appellee.

OPINION BY MR. JUSTICE FELL, January 6, 1908:

The object of the bill in equity filed in this case was to restrain by injunction one of the defendants from selling shares of stock of the Marine Coal Company, held by him as trustee for himself and others as a pledge to secure the payment of a debt due by the plaintiff. The facts material to the question involved are these: In June, 1901, the defendants owned seventy-two per cent of the stock of the Marine Coal Company, and the plaintiff, the C. Jutte Company, owned the remaining twenty-eight per cent. The defendants agreed to exchange their stock for stock of the Jutte company of the value of $360,800 and all of their shares excepting twenty, which were used to qualify five directors and keep up the organization of the company, were transferred to the Jutte company and they received in exchange temporary certificates of stock of that company. Before the defendants had received their final certificates of the stock of the Jutte company, they discovered that it had after the exchange and without notice to them incumbered its property with a first mortgage bond issue of $1,000,000 for the purpose of raising money with which to pay its purchase money notes. They then filed a bill for the recision of the contract of exchange and a return of their stock in the Marine Coal Company. While the case was on trial, a settlement was proposed and during the negotiations the defendants offered to accept $200,000 and to cancel the agreement of exchange, or to buy the plaintiff's stock in the Marine Coal Company at the same rate, and to give the plaintiff the right of first choice. The plaintiff elected to purchase, but could not pay in cash as the defendants had offered to do. The offer was then modified so as to require a cash payment of $40,000 and the pledging of the stock to secure the deferred payments. The cash payment of $40,000 was raised by the declaration of a dividend of that amount by the Marine Coal Company, which was paid to the Jutte company

and by it paid to the trustee. The deferred payments have all been made or tendered except the sum of $13,187. From the payment of this the plaintiff claims to be released because of a statement of the affairs of the company made during the negotiations mentioned. The only dispute of fact in the case related to this statement.

The plaintiff alleged that the statement exhibited was a ledger balance of December 1, 1902, which showed that the accounts payable were $717. The defendants alleged that the statement was a statement as of October 31, 1902, which showed the accounts payable to be $14,910. On this question the court found for the plaintiff, but a decree in its favor was refused for the reason that the statement of December 1 was a correct statement from the books ; that it did not purport to include the accounts payable for November and could not have done so because they had not been received and audited ; that it was made up by the bookkeeper of the Marine Coal Company, the management of which for eighteen months had been in the control of the plaintiff ; that it was used to ascertain whether the company had enough quick assets to meet the payment of a dividend of $40,000 and for no other purpose ; and that in fact no one was misled by it.

The learned judge considered the transaction as it really was without regard to the form of the agreement signed. The plaintiff was buying back its own stock given in exchange for the stock of the Marine Coal Company and paying for it with money and by giving its obligations. It was concerned to know where it could get the money and on the suggestion that it could be realized from the quick assets of the Marine Coal Company, the statement was produced in order to see what these were. The statement had that bearing and no other. As stated in the opinion of the court : " The question was as to quick assets. The Jutte company was settling a lawsuit and was willing to pay $200,000 and take back its stock, if it could pay the $40,000 in cash out of the quick assets of the Marine Coal Company."

The plaintiff was neither deceived nor harmed, and the bill was properly dismissed.

The decree of the court is affirmed at the cost of the appellant.